IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERNEST T. WILSON                )
                                )
            Plaintiff,          )
                                )
    -vs-                        )        Civil Action 20-1357
                                )
KILOLO KIJAKAZI,[1]             )
                                )
    Commissioner of Social Security    )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

## Synopsis

Plaintiff Ernest T. Wilson ("Wilson") brought this action for review of the final decision of the Commissioner of Social Security denying his claim for social security benefits. Wilson contends that he became disabled on December 1, 2002. (R. 16). He was represented by counsel at a hearing before an Administrative Law Judge ("ALJ") in August 2019. (R. 34-58). During the hearing both Wilson and a vocational expert ("VE") testified.  Ultimately, the ALJ denied benefits. Wilson filed this appeal. The parties have filed Cross-Motions for Summary Judgment. See ECF Docket Nos. 11 and 15.

## Opinion

1. <u>Standard of Review</u>

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court to review the transcripts and records on which a determination of the Commissioner is

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021, replacing Andrew Saul.

based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.*  The Commissioner's findings of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson,* 402 U.S. at 390, 91 S. Ct. 1420.

A district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.,* 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are

supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue,* 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

2. <u>The ALJ's Decision</u>

At step one, the ALJ determined that Wilson had not engaged in substantial gainful activity since May 17, 2018, the application date. (R. 18). At step two, the ALJ found that Wilson suffered from the following severe impairments: obesity, history  of pulmonary emboli, kidney stones, hypothyroidism, degenerative disc disease, arthritis, affective disorder, anxiety disorder, and personality disorder. (R. 18). Although the ALJ considered several other medical conditions, he did not find that they constituted "severe impairments." (R. 18-19). Turning to the third step, the ALJ concluded that those impairments, considered singly or in combination, did not meet or medically equal the severity of a listed impairment. (R. 19-21). The ALJ then found that Wilson had the residual functional capacity ("RFC") to perform sedentary work with certain restrictions. (R. 21-28). At the fourth step the ALJ concluded that Wilson had no past relevant work. (R. 28). Ultimately, at the fifth step of the analysis, the ALJ determined that Wilson was capable of performing work in jobs existing in significant numbers in the national economy. (R. 28-29). Consequently, the ALJ denied benefits.

3. <u>Discussion</u>

(1) Step Two – Severe Impairments

Wilson argues that the ALJ erred at step two of the sequential evaluation process in failing to find that his large abdominal pannus and excess skin were severe impairments. Wilson queries whether the ALJ considered these to be part of his morbid

obesity or failed to consider these impairments at all. According to Wilson, the ALJ also entirely failed to mention his agoraphobia or intermittent explosive disorder. Finally, Wilson urges that the ALJ erred in finding that his carpal tunnel constituted a non-severe, rather than severe, impairment.

Wilson's challenge lacks merit. A review of the record indicates that the ALJ considered Wilson's pannus and excess skin as components of his obesity. (R. 21, 22, 23, 26). The ALJ acknowledged Wilson's complaints regarding the difficulty his excess skin presented and referenced Wilson's testimony regarding his excess skin and pannus. (R. 21, 26, 41). With respect to his carpal tunnel, the ALJ acknowledged the condition, but found that it did not cause more than minimal limitations. (R. 17). The ALJ's finding in this regard is supported by substantial evidence of record, including that his hand and finger dexterity were intact, that he had full grip strength, and that he could zip, button and tie. (R. 18, 740). The ALJ also referenced Wilson's agoraphobia and intermittent explosive disorder in formulating the RFC, but noted that the only prescribed medication was Vistaril, and that notations indicated that Wilson did better when outside of his home. (R. 25).

Significantly, the ALJ did not deny Wilson's application for benefits at step two of the analysis. Rather, the ALJ found in Wilson's favor at step two when he concluded that Wilson's obesity, history of pulmonary emboli, kidney stones, hypothyroidism, degenerative disc disease, arthritis, affective disorder, anxiety disorder, and personality disorder were severe impairments. (R. 18-19). The ALJ ruled against Wilson only later in the sequential evaluation process, after concluding that his residual functional capacity was sufficient to enable him to perform jobs that exist in significant numbers in

the national economy. (R. 28-29). Thus, even accepting Wilson's position as correct for purposes of argument, such errors were harmless because the ALJ found that he suffered from other impairments which did qualify as "severe." *See Salles v. Comm'r. of Soc. Sec.*, 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007) (stating that, "[b]ecause the ALJ found in Salle's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."), *citing Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). *See also, Bliss v, Astrue*, Civ. No. 8-980, 2009 WL 413757 (W.D. Pa. Feb. 18, 2009) (stating that, "as long as a claim is not denied at step two, it is not generally necessary for the ALJ to have specifically found any additional alleged impairments to be severe… . Since Plaintiff's claim was not denied at step two, it does not matter whether the ALJ correctly or incorrectly found Plaintiff's neuropathy and sleep apnea to be non-severe.").

    (2) Conflict Between Dictionary of Occupational Titles ("DOT") and Vocational Expert ("VE") Testimony

During the hearing the ALJ posed a hypothetical to the VE. Specifically, the ALJ asked the VE to assume an individual of Wilson's age, education, and work experience, with the RFC of sedentary work which is low in stress, meaning work requiring only routine, repetitive tasks, only occasional judgment, decision making, and work place changes, and only occasional interaction with the public, coworkers and supervisors. (R. 55-56). The ALJ then queried whether there would be jobs that such an individual could perform. The VE responded that the jobs of document preparer, surveillance systems monitor, and addresser fall within those parameters. (R. 56). When asked whether the VE's testimony was consistent with the DOT, the VE explained that he was relying upon

his work experience in answering the hypothetical insofar as the DOT was silent on particular issues. (R. 56).

Wilson contends that the ALJ erred in failing to resolve the inherent conflict present between the VE's testimony and the DOT with respect to two of the three identified jobs. Specifically, Wilson argues that the RFC the ALJ established for him is incompatible with the positions of a document preparer and / or an addresser because those positions require level 3 and level 2 reasoning. As such, he insists, they are inconsistent with the RFC of someone who is limited to simple, routine, repetitive tasks.

Wilson's argument is unconvincing. Even assuming, for purposes of argument only, that Wilson is correct that an inherent conflict exists between the ALJ's finding that Wilson's RFC limits him to performing simple, routine, and repetitive tasks and the ability to perform the duties of a document preparer, his challenge fails. First, he makes no allegations of error regarding the third position identified by the VE and relied upon by the ALJ – that of surveillance system monitor. (R. 28). Second, his challenge regarding the position of addresser lacks merit. As recognized by others within this Circuit, "[t]here is a growing consensus within this Circuit and elsewhere that '[w]orking at reasoning level 2 [does] not contradict the mandate that [a claimant's] work be simple, routine, and repetitive.'" *Meloni v. Colvin*, 109 F. Supp. 3d 734, 742 (M.D. Pa. 2015), *quoting, Money v. Barnhart*, 91 Fed. Appx. 210 *3d Cir. 2004). *See also, Bodkins v. Saul*, Civ. No. 17-370, 2020 WL 6471020, at * 2 (M.D. Pa. Nov. 3, 2020) (rejecting challenge that ALJ failed to adequately explain why someone limited to performing simple, routine, repetitive tasks would be able to work at a reasoning level 2) and *Latham v. Astrue*, Civ. No. 11-180, 2012 WL 4596707, at * 6 (W.D. Pa. Oct. 1, 2012)

(rejecting plaintiff's argument that a conflict exists between the VE's testimony and the DOT because the ALJ limited plaintiff to simple, routine, repetitive tasks and jobs with reasoning level of 2 based on *Money* decision). Consequently, with two of the three positions identified by the VE remaining, I reject Wilson's argument as unconvincing.

   (3) Residual Functional Capacity

   Finally, Wilson contends that the RFC is not based upon substantial evidence of record. Wilson takes aim at the ALJ's finding regarding his ability to sit and how it impacts his ability to work. Again, I find no error. The ALJ's decision is supported by substantial evidence of record, including the state agency physician, Dr. Jack Hutchenson's, residual functional capacity assessment finding that Wilson is capable of sitting about 6 hours in an 8-hour workday (R. 26, 97) Additionally, the findings of a consultative examination report dated October 1, 2018 indicate that Wilson could sit for 6 hours at a time without interruption and for a total of 8 hours during a workday. (R. 26, 743).

   To the extent that Wilson objects to the ALJ's alleged failure to give appropriate weight to his complaints regarding the discomfort he experiences when sitting, again, I find his objections to be unpersuasive. An ALJ must follow a two-step process when assessing pain: first, he must determine whether there is a medical impairment that could reasonably be expected to produce the claimant's pain or other symptoms; and, second, he must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. Pain alone does not establish disability. 20 C.F.R. 404.1529(a), 416.929(a). Allegations of pain must be consistent with objective medical evidence and the ALJ

must explain the reasons for rejecting non-medical testimony. *Burnett v. Comm'r. of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). In evaluating a claimant's statements regarding pain, the ALJ will consider evidence from treating, examining, and consulting physicians, observations from agency employees; and other factors such as the claimant's daily activities; descriptions of the pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment other than medication; and other measures used to relieve the pain. 20 C.F.R. 404.1529, 416.929. I must defer to the ALJ's determinations unless they are not supported by substantial evidence. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 429 U.S. 931 (1975).

Here, the ALJ specifically stated that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and SSR 16-3p." (R. 20) Further, the ALJ followed the proper method in assessing Wilson's symptoms and pain. That is, he first determined whether there was an underlying medically determinable physical or mental impairment that could reasonably be expected to produce his pain or other symptoms, then the ALJ evaluated the intensity, persistence and limiting effects of those symptoms. (R. 20-21). The ALJ comprehensively detailed Wilson's medical history. He properly compared the medical evidence and other evidence of record, including activities of daily living, the intensity of pain, factors that precipitate and aggravate the symptoms, the effectiveness of medication, the treatment other than medication, and found them not to be entirely consistent. The ALJ also noted Wilson's noncompliance with recommendations

regarding diet and exercise. (R. 22). In short, there can be no suggestion that he ignored or improperly discounted Wilson's complaints of pain. Rather, as stated above, the ALJ's findings are supported by substantial evidence of record.

Consequently, there is no basis for remand.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERNEST T. WILSON                          )
        Plaintiff,                          )
                                    )
  -vs-                                  )          Civil Action No. 20-1357
                                      )
KILOLO KIJAKAZI,                           )
                                      )
Commissioner of Social Security, Defendant.   )

AMBROSE, Senior District Judge.

**ORDER OF COURT**

Therefore, this  23rd day of July, 2021, it is hereby ORDERED that the Motion for Summary Judgment (Docket No. 11) is DENIED and the Motion for Summary Judgment (Docket No. 15) is GRANTED. The Clerk of Courts shall mark this case "Closed" forthwith.

BY THE COURT:

Donetta W. Ambrose
United States Senior District Judge

10